Kenneth Wayne CUSTER, Plaintiff,

v.

Sylvia Angela CUSTER,
Defendant/Appellee,

and

Southern Electrical Retirement Fund,
Defendant/Appellant.

Court of Appeals of Tennessee,
Eastern Section.

Dec. 27, 1988.

Rehearing Denied Feb. 6, 1989.

Application for Permission to Appeal
Denied by Supreme Court
May 8, 1989.

Certiorari Denied Oct. 30, 1989.
See 110 S.Ct. 324.

awarded $11,236.55 of the husband's pension to the wife. When Fund refused to disburse the money, the wife filed a petition to show cause.

Fund moved to dismiss the petition to show cause, on grounds the Employee Retirement Income Security Act ("ERISA") prohibited distribution of Fund proceeds. The court overruled Fund's motion and ordered it to immediately disburse the money to the wife. Fund appealed.

On appeal, Fund argues that employees participating in a retirement plan governed by ERISA cannot assign or alienate their benefits. Fund contends that, although Congress provided an exception for qualified domestic relations orders ("QDRO"), defined in ERISA, a participant may not receive any benefits until age 55 under the plan; therefore, the earliest effective date for a QDRO, and the earliest date on which the wife could receive her share of the benefits, would be the husband's 55th birthday. Fund points to the following language in ERISA to support its argument:

> Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.
>
> . . . .
>
> ... the term "earliest retirement age" means the earlier of—
>
> (I) the date on which the participant is entitled to a distribution under the plan, or
>
> (II) the later of the date of [sic] the participant attains age 50 or the earliest date on which the participant could begin receiving benefits under the plan if the participant separated from service.

29 U.S.C. § 1056(d)(1), (3)(E)(ii) (Supp.1988).

Fund also contends that the trial court erred in ordering immediate disbursement of the money in violation of ERISA's prescribed 18–month time frame for the plan administrator to determine whether the divorce decree met the requirements of a QDRO. For the following reasons, we affirm the trial court's order.

■ Since the issues involve questions of law, our scope of review is *de novo* with no presumption of correctness for the trial

S. Del Fuston, Chattanooga, for defendant/appellant.

Michael E. Richardson, Patrick, Beard & Richardson, P.C., Chattanooga, for defendant/appellee.

## OPINION

ANDERSON, Judge.

Southern Electric Retirement Fund ("Fund"), appeals the Chancellor's judgment ordering payment of one-half of the husband's pension to the wife.

Kenneth Wayne Custer, aged 32, and Sylvia Angela Custer were divorced on July 30, 1987. The divorce decree approved a property settlement agreement which

court's conclusion of law. *Barnett v. Watco, Inc.*, 682 S.W.2d 212, 218 (Tenn.Ct.App. 1984); *Billington v. Crowder*, 553 S.W.2d 590 (Tenn.Ct.App.1977).

## A. HISTORY OF ERISA

ERISA was enacted to protect pension plan participants and their beneficiaries. *Smith v. Mirman*, 749 F.2d 181, 182 (4th Cir.1984). According to the legislative history, the "most important purpose" of ERISA is to "assure American workers that they may look forward with anticipation to a retirement with financial security and dignity, and without fear that this period of life will be lacking in the necessities to sustain them as human beings within our society." *Id.*, citing S.Rep. No. 93–127, 93d Cong., 2d Sess. (1974), *reprinted in* U.S.Cong.Code & Admin. News, pp. 4639, 4849 (1974). To further insure that the accrued benefits are actually available to the employee upon retirement, ERISA prohibits assignment or alienation of benefits. *Id. citing* H.R.Rep. No. 93–807, 93d Cong., 2d Sess. (1974), *reprinted in* U.S.Cong.Code & Admin.News, p. 4734 (1974).

However, courts divided on the issue of whether the accrued benefits in ERISA plans could be paid to dependents, including former spouses, before a plan's participant retired. Courts allowing disbursements from the fund prior to the participant's retirement did so on the theory that, although Congress preempted state laws to the contrary and although § 1056(d)(1) expressly provided that plan benefits "may not be assigned or alienated," the basic premise of the Act was to provide protection for the funds from outside creditors, and that dependents, including former spouses, were not third party creditors.

Courts which strictly construed the anti-alienation provision distinguished between pension plans in pay status, in which the participants were already receiving benefits from the plan, and those not in pay status. These courts observed that most awards or disbursements under the plan were granted to spouses of retired participants. The court also focused upon the contractual nature of employee benefits, and observed that courts "may not rewrite the contractual obligations of the parties by compelling the employer to make a premature distribution to an employee or his spouse of funds held for the benefits of the employees." *Monsanto Co. v. Ford*, 534 F.Supp. 51, 53 (E.D.Mo.1981).

Recognizing the conflicts between courts construing the anti-alienation provision of ERISA, Congress added paragraph (3) to 29 U.S.C. § 1056(d).[1] The new sec-

---

1. [The anti-alienation provision] shall not apply if the order is determined to be a qualified domestic relations order. Each pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order.

   (B) For purposes of this paragraph—
   (i) the term "qualified domestic relations order" means a domestic relations order—
   (I) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan,
   . . . .
   (ii) the term "domestic relations order" means any judgment, decree, or order (including approval of a property settlement agreement which—
   (I) relates to the provision of . . . marital property rights to a spouse, [or] former spouse, . . . and
   (II) is made pursuant to a State domestic relations law (including a community property law)

   . . . .
   (D) A domestic relations order meets the requirements of this subparagraph only if such order—
   (i) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan, . . .
   (E)(i) In the case of any payment before a participant has separated from service, a domestic relations order shall not be treated as failing to meet the requirements of clause (i) of subparagraph (D) solely because such order requires that payment of benefits be made to an alternate payee—
   (I) on or after the date on which the participant attains (or would have attained) the earliest retirement age,
   (II) as if the participant had retired on the date on which such payment is to begin under such order (but taking into account only the present value of benefits actually accrued . . .
   29 U.S.C. § 1056(d)(3)(A); (B)(i)(I), (ii)(I), (II); (D)(i); (E)(i)(I), (II) (1985 & Supp.1988).

tion excepted "qualified domestic relations orders" from the provision prohibiting alienation of benefits. A QDRO "creates or recognizes the existence of an alternate payee's right to ... receive all or a portion of the benefits payable with respect to a participant under a plan." Additionally, the order must specify the amount or percentage of the benefits payable to the alternate payee (or the manner in which the amount is to be determined), and the plan to which the order applies. 29 U.S.C. § 1056(d)(3)(B), (C) (1985 & Supp.1988). The order may not require the plan to provide a type or form of benefit or option not provided under the plan. However, the Act specifically provides that if an order requires payment of benefits to an alternate payee "as if the participant had retired on the date on which such payment is to begin under the order," it would meet the requirements of that clause.

According to the legislative history of the Retirement Equity Act of 1984, the Senate Report noted that ERISA was amended to

> provide for greater equity under private pension plans for workers and their spouses ... by taking into account changes in work patterns, the status of marriage as an economic partnership, and the substantial contribution to that partnership of spouses who work both in and outside the home.

S.Rep. No. 575, 98th Cong., 2d Sess. (1984), *reprinted in* 1984 U.S.Code Cong. & Admin.News 2547. The Report also observed that "the assignment of [an] alternate payee's rights to the benefits is not considered an assignment or alienation of benefits under the plan if and only if the order is a qualified domestic relations order," and that state law providing these rights under a QDRO would be exempt from federal pre-emption. *Id.* at 2565.

The divorce judgment of July 30, 1987, contained the following provisions, in addition to other provisions which are required by ERISA:

> (a) *Application of Retirement Equity Act of 1984.* The Court determines that pursuant to the Retirement Equity Act

of 1984 (Act) Public Law 98–397, Section 204, $11,236.55 of Kenneth Wayne Custer's retirement benefits under the Southern Electrical Retirement Fund may be disbursed and distributed to Sylvia Angela Custer pursuant to this order as soon as administratively possible in the form provided in such respective plan.

> (b) *Effective Date.* This order is entered as a Qualified Domestic Relations Order, as that term is used in the Act.

Our review of the divorce decree reflects that it complies in every respect with ERISA.

■ Thus, contrary to Fund's argument, disbursement of retirement plan funds to a nonparticipant spouse in compliance with a QDRO is not contingent upon the age of the participant spouse at the time the funds are to be distributed. Since the Custers' divorce decree is a "Qualified Domestic Relations Order" as defined by ERISA in 29 U.S.C. § 1056(d)(3), the wife may receive the fund awarded to her by the court's decree "as if the participant [the husband] had retired on the date on which such payment is to begin." 29 U.S.C. § 1056(d)(3)(E)(i)(II) (1985).

## B. 18–MONTH DETERMINATION PERIOD

■ Fund argues that the statute, 29 U.S.C. § 1056, provides an 18–month period for the plan administrator to review the court order to determine if it meets the requirements of a QDRO and that time has not elapsed. The applicable section of the statute provides that a plan administrator shall determine whether the order is a QDRO within a "reasonable period" after receiving the order. 29 U.S.C. § 1056(d)(3)(G). The term "reasonable period" is not defined; however, the statute also recognizes that others may make that determination, including a "court of competent jurisdiction." 29 U.S.C. § 1056(d)(3)(H). In this case, a court of competent jurisdiction found that the order met the requirements of a QDRO. That is all the statute requires. Under the terms of the statute, once the order is "deter-

mined" to be a QDRO, "the plan administrator shall pay the segregated amounts." Accordingly, we find Fund's argument without merit.

For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are taxed to the Appellant.

SANDERS, P.J. (E.S.), and FRANKS, J., concur.

### ORDER ON PETITION TO RECONSIDER OR REHEAR

Defendant–Appellant's Petition to Reconsider or Rehear, upon due consideration, is respectfully denied.