IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 7, 2019

**IN RE ESTATE OF MILFORD CLEO TODD**

**Appeal from the Chancery Court for Benton County**
**No. 3190     Carma Dennis McGee, Chancellor**

_____

**No. W2018-01088-COA-R3-CV**

_____

In this case, the decedent's ex-wife filed a claim against his estate to collect unpaid pension benefits awarded to her in their divorce. She asserted that the decedent failed to pay her a pro rata share of his cost-of-living allowances and "supplemental" benefit. The executrix for the decedent's estate filed an exception to the claim, asserting that the divorce decree expressly provided that the ex-wife would "have no claim against the estate of [the decedent]," and did not award cost-of-living allowances or an interest in the "supplemental" benefit. The trial court found that the divorce decree did not bar the ex-wife's action, that the ex-wife was entitled to a share of the decedent's cost-of-living allowances and "supplemental" benefit, and awarded prejudgment interest. We affirm the trial court's award of damages and interest but modify the judgment to reflect that the ex-wife is entitled to postjudgment rather than prejudgment interest.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which THOMAS R. FRIERSON II and KENNY W. ARMSTRONG, JJ., joined.

Anthony Leon Sanders, Waverly, Tennessee, and Mark C. Odle, Dickson, Tennessee, for the appellant, Nancy Todd Plant, Executrix of the Estate of Milford Cleo Todd.

Terry Jack Leonard, Camden, Tennessee, for the appellee, Janice Mai White.

**OPINION**

On October 30, 1990, the Chancery Court of Benton County entered a final judgment ("the Divorce Decree") dissolving the marriage of Milford Cleo Todd ("Decedent") and Janice Mai White ("Claimant"). The Divorce Decree provided, _inter alia_, that Claimant would receive 30% of Decedent's "net monthly T.V.A. Financed Pension." The Divorce Decree also provided that Claimant would "have no claim against

the estate of [Decedent] and all payment stops at [Decedent]'s death." After the divorce, Claimant began receiving monthly payments for $210 to satisfy the judgment.

By 2006 Decedent's benefit from the Tennessee Valley Authority ("TVA") was composed of a "Pension" benefit and a "Supplemental Pension" benefit and totaled $2,062.10, 30% of which would be $618.63. Moreover, from 2007 to 2014, both "benefits" increased annually at an average rate of 2%; nevertheless, Claimant continued to receive a monthly payment of $210.

Decedent died on May 3, 2015, at the age of 89 years old. Shortly thereafter, his daughter, Nancy Todd Plant, filed a Petition for Probate with the Chancery Court of Benton County. Pursuant to an order entered on May 28, 2015, Ms. Plant ("Executrix") was appointed as the executrix of the estate.

On June 15, 2015, Claimant filed a claim against the estate alleging Decedent owed her an unspecified amount for "Backpay of TVA Pension per divorce decree 4-30-90." Executrix filed a timely exception to the claim asserting, *inter alia*, that the Divorce Decree barred any post-death claims by providing that Claimant would "have no claim" against Decedent's estate.

In March 2018, the trial court conducted a bench trial on the issues of whether the Divorce Decree barred the claim and, if not, what amount Decedent owed to Claimant; whether Claimant was entitled to a pro rata share of the supplemental benefit or the cost-of-living allowances; and whether Claimant was entitled to prejudgment interest. Although the Divorce Decree was entered in 1990, the parties agreed that the ten-year statute of limitations barred Claimant from recovering any unpaid amounts due before May 2005. At issue was the following language from the Divorce Decree:

> IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED AS FOLLOWS:
>
> .     .     .
>
> 7. That Janice Todd shall receive 30% of M. C. Todd's net monthly T.V.A. Financed Pension. M. C. Todd shall not be responsible for payment of taxes on 30% paid to Janice Todd. Janice Todd shall have no claim against the estate of M. C. Todd and all payment stops at M. C. Todd's death.
>
> This portion of the judgment is intended to be a "Qualified Domestic Relations Order" under 11 USC Sec 532(5) . . . .
>
> 8. That to ensure Janice Todd's 30% of M. C. Todd's T.V.A. Financed Pension a judicial lien is hereby placed upon M. C. Todd's T.V.A. Financed Pension not to exceed 30%.

- 2 -

On May 14, 2018, the court entered an order finding that the Divorce Decree did not bar Claimant's right to collect amounts owed to her at the time of Decedent's death. The court also found that Decedent's "net monthly T.V.A. Financed Pension" included Decedent's Pension and Supplemental Pension with cost-of-living allowances, minus amounts withheld for medical insurance, federal income tax, and life insurance. Accordingly, the court awarded Claimant a judgment against Decedent's estate for $35,278.33, representing the difference between the $210 per month paid to Claimant and the amount she was entitled to under the Divorce Decree for the months from May 2005 through April 2015. Moreover, the court found that Claimant was entitled to $16,749.37 in prejudgment interest. This appeal followed.

Executrix raises five issues that we restate and consolidate as three: (1) whether the Divorce Decree barred the claim; (2) if not, whether Claimant was entitled to a pro rata share of the supplemental benefit or the cost-of-living allowances; and (3) whether the trial court erred by awarding prejudgment interest.

## STANDARD OF REVIEW

"In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01. If the trial court makes the required findings of fact, appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (citing Tenn. R. App. P. 13(d)). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *State ex rel. Flowers v. Tennessee Trucking Ass'n Self Ins. Grp. Tr.*, 209 S.W.3d 595, 598–99 (Tenn. Ct. App. 2006) (citations omitted).

"The interpretation of a judgment is a question of law." *Pruitt v. Pruitt*, 293 S.W.3d 537, 544 (Tenn. Ct. App. 2008) (citing *Ziobrowski v. Ziobrowski*, No. M2006-02359-COA-R3-CV, 2007 WL 4530460, at *3 (Tenn. Ct. App. Dec. 20, 2007)). We review questions of law de novo with no presumption of correctness. *Poole v. Union Planters Bank, N.A.*, 337 S.W.3d 771, 777 (Tenn. 2010).

An award of prejudgment interest is within the discretion of the trial court, *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998), and discretionary decisions are reviewed pursuant to the "abuse of discretion" standard of review. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). The abuse of discretion standard does not permit reviewing courts to substitute their discretion for the trial court. *Id*. Nevertheless,

the abuse of discretion standard of review does not immunize a lower court's decision from any meaningful appellate scrutiny:

> Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.
>
> [R]eviewing courts should review a [trial] court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions. When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the [trial] court's legal determinations de novo without any presumption of correctness.

*Id.* at 524–25 (internal citations omitted).

## ANALYSIS

### I.   LIMITATION OF CLAIMS AGAINST DECEDENT'S ESTATE

Executrix contends that the Divorce Decree placed a time limit on Claimant's collection of benefits by stating that Claimant "shall have no claim against the estate of M. C. Todd and all payment stops at M. C. Todd's death." In response, Claimant argues the agreement was conditioned on Decedent paying per the Divorce Decree.

"Like other written instruments, orders and judgments should be interpreted and enforced according to their plain meaning." *Morgan Keegan & Co., Inc. v. Smythe*, 401 S.W.3d 595, 608 (Tenn. 2013). When a final Divorce Decree incorporates a marital dissolution agreement ("MDA"), the terms of the MDA are construed according to the intention of the parties. *Ahern v. Ahern*, 15 S.W.3d 73, 81 (Tenn. 2000) ("In the event [an] MDA is ambiguous, it is the intent of the parties that is relevant, not the intent of the trial judge."). Unlike MDAs and other written instruments, however, "the determinative factor [when interpreting orders and judgments] is the intention *of the court* as collected

- 4 -

from all parts of the judgment." *Pruitt*, 293 S.W.3d at 544 (emphasis added) (citing *Ziobrowski*, 2007 WL 4530460, at *3). Although the Divorce Decree states that the Decedent and Claimant reached "an agreement on all issues" and that "the agreement between the parties shall be incorporated by reference and adopted as judgment of this [c]ourt," there is no marital dissolution agreement. The language at issue comes solely from the Divorce Decree itself. Accordingly, the relevant question is not the intention of the parties but the intention of the court.

In *Morgan Keegan & Co., Inc. v. Smythe*, the Tennessee Supreme Court laid out the proper method for interpreting a court order:

Trial courts, as a general matter, speak through their orders and judgments. Like other written instruments, orders and judgments should be interpreted and enforced according to their plain meaning. When an order or judgment permits more than one interpretation, it should be construed with reference to the issues it was meant to decide, and should be interpreted in light of the context in which it was entered, as well as the other parts of the record, including the pleadings, motions, issues before the court, and arguments of counsel.

Court orders and judgments, like other documents, often speak as clearly through implication as they do through express statements. Accordingly, when construing orders and judgments, effect must be given to that which is clearly implied, as well as to that which is expressly stated.

401 S.W.3d at 608 (internal citations omitted).

The Divorce Decree dissolved the parties' marriage and equitably divided the marital estate. To that end, paragraph seven divided Decedent's "net monthly T.V.A. Financed Pension" by awarding Claimant a 30% interest with the award to terminate upon Decedent's death. Critical to the primary issue on appeal, the Divorce Decree went on to state, "[Claimant] shall have no claim against the estate of [Decedent]." Based on the following analysis, we have determined that this clause limits Claimant's right to survivor benefits rather than Claimant's right to recover her pro rata share of the benefits that accrued prior to Decedent's death.

To begin with, the Divorce Decree uses the phrase "no claim" in four other paragraphs to limit the parties' interest in certain marital assets. Paragraphs two and three provide that each party "makes and has no claim" in real estate owned by the other. Paragraph 12 provides that Claimant "makes and has no claim against" a shared bank account. Paragraph 16 provides that Claimant "makes and has no claim to" savings bonds held in the names of Decedent's family members. Accordingly, the directive that Claimant "shall have no claim" against Decedent's estate implies that Claimant would

- 5 -

have no interest in any future benefits accruing as a consequence of Decedent's death or after his death.

We also find significant the Divorce Decree's instruction that "[t]his portion of the judgment is intended to be a 'Qualified Domestic Relations Order.'" A qualified domestic relations order ("QDRO") "creates or recognizes the existence of an alternate payee's right to . . . receive all or a portion of the benefits payable with respect to a participant under a plan." *Jordan v. Jordan*, 147 S.W.3d 255, 259 (Tenn. Ct. App. 2004) (footnote omitted) (quoting 29 U.S.C. § 1056(d)(3)(B)(i)(I) (1999)). To become "qualified," a domestic-relations order awarding pension benefits must be approved by the pension plan administrator. *Id*. at 260. Alternate beneficiaries may enforce the QDRO against the plan administrator to receive benefits. *See id*. at 261 (explaining that the wife could not "simply send [the pension plan administrator] a certified copy of her judgment of divorce and successfully demand payment of 42% of Husband's benefits."); *Custer v. Custer*, 776 S.W.2d 92, 95–96 (Tenn. Ct. App. 1988) (affirming trial court's order requiring pension fund administrator to pay ex-wife according to the terms of the QDRO).

Despite the Divorce Decree's directive that the award of pension benefits be a QDRO, the Divorce Decree was not approved by the plan administrator; thus it was never recognized as a QDRO.[1] Had it been approved, the appropriate payments would have been made directly to Claimant and this controversy would not have arisen. Nevertheless, the language in the Divorce Decree makes it clear that the trial court intended Claimant to be an alternate beneficiary of the plan. Our reading of the Divorce Decree is buttressed by paragraph eight of the Divorce Decree, which states, "[T]o ensure [Claimant]'s 30% of [Decedent]'s T.V.A. Financed Pension[,] a judicial lien is hereby placed upon [Decedent]'s T.V.A. Financed Pension not to exceed 30%." Although this provision is arguably unenforceable in light of ERISA's anti-alienation provision, *see* 29 U.S.C. § 1056(d)(1) ("Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated."), it implies an intention to provide Claimant with a remedy to collect her interest without regard to Decedent's death.

We also find unpersuasive Executrix's argument that the trial court's interpretation constituted an impermissible modification of the Divorce Decree. Orders of clarification are permissible when their purpose is "to facilitate enforcement of the final order of divorce." *See Bridges v. Bridges*, 168 S.W.3d 158 (Tenn. Ct. App. 2004) (affirming trial

---

[1] There is no evidence in the record that a request for approval was made or that one was approved.

court's order on the ground that it was an order of clarification rather than modification); *see also* 24 Am. Jur. 2d *Divorce and Separation* § 562 ("Although a court generally may not modify a final divorce decree, it may construe and clarify a decree in case of uncertainty, in order to sustain rather than defeat it."). Accordingly, courts may take action not originally contemplated by a divorce decree when the purpose is to facilitate its enforcement. *See Dulin v. Dulin*, No. W2001-02969-COA-R3-CV, 2003 WL 22071454, *6 (Tenn. Ct. App. Sept. 3, 2003) (affirming trial court's divestment of husband's interest in marital home when the parties failed to sell the property within five years as required by the marital dissolution agreement), *overruled on other grounds by Eberbach v. Eberbach*, 535 S.W.3d 467 (Tenn. 2017).

For the foregoing reasons, we affirm the trial court's determination that the Divorce Decree does not bar the claims at issue.

## II. Right to Cost-of-Living Adjustments

Executrix contends that the court erred by interpreting the Divorce Decree as awarding Claimant a pro rata share in Decedent's supplemental benefit and cost-of-living allowances because the Divorce Decree makes no reference to the supplemental benefit or increases. In other words, Executrix claims that the Divorce Decree entitled Claimant to only 30% of the net monthly amount Decedent was receiving in 1990.[2] To the contrary, we find the lack of specificity in the Divorce Decree supports the conclusion that the award of "30% of [Decedent]'s net monthly T.V.A. Financed Pension" entitled Claimant to 30% of the net value Decedent received every month from the pension financed by TVA.

We considered similar language in *Bridges v. Bridges*, where the Divorce Decree initially awarded the wife with a 50% interest in the husband's "military retirement benefits." 168 S.W.3d at 159. The trial court later clarified that the award included a portion of the husband's cost-of-living allowances. *Id*. On appeal, the husband argued that the trial court impermissibly modified the Divorce Decree because the original order did not expressly include cost-of-living allowances. *Id*. at 160–61. We disagreed, finding that the usual, natural, and ordinary meaning of "retirement benefits," as used in the original order, included all "amounts to which the retiree would ordinarily be entitled as a result of retirement." *Id*. at 162 (quoting *Johnson v. Johnson,* 37 S.W.3d 892, 896 (Tenn. 2001)).

---

[2] Neither party presented evidence to prove the amount of Decedent's net monthly benefit at the time of the divorce.

We find no material distinction between the usual, natural, and ordinary meaning of the word "pension" and the phrase "retirement benefits." *See* Tenn. Code Ann. § 36-4-121(b)(1)(B)(iii) (defining "marital property" as including "the value of vested and unvested pension benefits, vested and unvested stock option rights, retirement, and other fringe benefit rights accrued as a result of employment during the marriage"). The statements entered into evidence show that Decedent received his benefit from the "TVA Retirement System" and informed Decedent that his "retirement benefits" would be disbursed via direct deposit. According to other documents in the record, TVA provided both the "pension" and "supplemental pension" benefits to retirees in consideration of their years of service. Thus, the supplemental benefit and cost-of-living allowances were "amounts to which [Decedent] would ordinarily be entitled as a result of retirement" from TVA.

Based on the foregoing, we affirm the trial court's determination that Claimant was entitled to 30% of Decedent's pension and supplemental pension benefits, including cost-of-living allowances.

### III.    Award and Calculation of Prejudgment Interest

Finally, Executrix contends that Claimant was not entitled to prejudgment interest because Executrix raised reasonable grounds to dispute the claim. While we agree that an award of prejudgment interest was not appropriate, we do so on the basis that Claimant was already entitled to postjudgment interest on the obligation created by the Divorce Decree.

Tennessee Code Annotated § 47-14-123 permits the award of prejudgment interest "in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum." The purpose of prejudgment interest "is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled." *Hunter v. Ura*, 163 S.W.3d 686, 706 (Tenn. 2005) (quoting *Myint,* 970 S.W.2d at 927). The decision to award prejudgment interest is discretionary and is based on equitable factors, including whether the defendant raised reasonable grounds to dispute the claim. *Id.* Prejudgment interest may be inappropriate when the party seeking interest "has already been otherwise compensated for the lost time-value of [his] money." *Scholz v. S.B. Int'l, Inc.*, 40 S.W.3d 78, 83 (Tenn. Ct. App. 2000) (citations omitted).

On the other hand, Tennessee Code Annotated § 47-14-121 automatically entitles judgment creditors to postjudgment interest. *See Tallent v. Cates*, 45 S.W.3d 556, 563 (Tenn. Ct. App. 2000) (explaining that "[i]nterest on judgments in Tennessee is statutorily mandated") (citing Tenn. Code Ann. § 47-14-121). Like prejudgment interest, the purpose of postjudgment interest is to compensate a party for the loss of the use of funds to which he or she was legally entitled. *See Clark v. Shoaf*, 302 S.W.3d 849, 858–

59 (Tenn. Ct. App. 2008) (explaining that the award of postjudgment interest is "based upon a party's entitlement to the use of the proceeds of a judgment") (citing *State v. Thompson,* 197 S.W.3d 685, 693 (Tenn. 2006)). Because postjudgment interest is provided for by statute, the failure of a court to expressly award postjudgment interest does not affect the creditor's entitlement to such interest. *Tallent*, 45 S.W.3d at 563 (citing *Inman v. Inman,* 840 S.W.2d 927, 932 (Tenn. Ct. App. 1992)). When a judgment is payable in installments, postjudgment interest is calculated on each installment from the date the payment is due under the judgment until payment is made. *Price v. Price*, 472 S.W.2d 732, 734 (Tenn. 1971) (quoting 33 A.L.R.2d 1455); *see also Givler v. Givler*, No. 03A01-9104-CV-00134, 1991 WL 167155, at *2 (Tenn. Ct. App. Sept. 3, 1991) (holding that wife was entitled to postjudgment interest on past-due monthly payments from husband's pension from the date each payment was due).

Here, the Divorce Decree awarded Claimant 30% of Decedent's net "monthly" pension, implying that the judgment was payable in monthly installments. By operation of Tennessee Code Annotated § 47-14-121, interest automatically accrued on any unpaid portion of Claimant's share, irrespective of equitable factors. When the Divorce Decree was entered in 1990, § 121 provided interest at a rate of 10% per year. Tenn. Code Ann. § 47-14-121 (1988). This is the same interest rate that the trial court awarded for prejudgment interest and it adequately compensates Claimant for the lost time-value of her money.

Because Claimant is statutorily entitled to postjudgment interest, we find it would be inequitable for Claimant to collect prejudgment interest on the same principal obligation. Because the same interest rate applies, our determination does not change the amount of the trial court's judgment.

## IN CONCLUSION

For the foregoing reasons, we affirm the trial court's award of damages in the amount of $35,278.33 and award of interest in the amount of $16,749.37, but we modify the judgment to reflect that the award of interest is pursuant to Tennessee Code Annotated § 47-14-121 rather than § 47-14-123. Costs of appeal are assessed against Nancy Todd Plant, Executrix of the Estate of Milford Cleo Todd.

_____
FRANK G. CLEMENT JR., P.J., M.S.