Deborah L. JORDAN

v.

Walter B. JORDAN.

Court of Appeals of Tennessee,
at Knoxville.

Dec. 2, 2003 Session.

March 29, 2004.

Permission to Appeal Denied by
Supreme Court Oct. 4, 2004.

Ronald J. Berke, Chattanooga, Tennessee, for the appellant, Deborah L. Jordan.

David Haines Rotroff, Chattanooga, Tennessee, for the appellee, Walter B. Jordan.

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

## OPINION

This appeal presents a question of first impression. Deborah L. Jordan ("Wife") filed a proposed "qualified" domestic relations order ("QDRO") with the trial court clerk more than 10 years after her divorce from Walter B. Jordan ("Husband"). The trial court entered the proposed QDRO. Husband filed a motion for relief from judgment, arguing that the entry of the proposed QDRO was barred because Wife failed to act "within ten (10) years of the entry of [the] judgment contained in the Final Decree of Divorce," citing Tenn.Code Ann. § 28–3–110 (2000). The trial court granted Husband's motion and set aside the previously-entered QDRO. Wife appeals, arguing that the ten-year statute of limitations does not apply to the filing of a proposed QDRO because, according to her, such a filing is not an action to enforce a judgment. We agree with Wife's position. Accordingly, we reverse the judgment of the trial court.

## I.

The parties were divorced by judgment entered August 29, 1991. The judgment provides, among other things, as follows:

The Court further orders and decrees that [Wife] is entitled to forty-two (42%) percent of all benefits provided to [Husband] from his employment at the E.I. DuPont deNemours & Company includ-

ing but not limited to the Savings and Investment Plan and Tax Reform Act Stock Ownership Plan. The Court having considered that [Wife] is employed with minimum wage benefits and that [Wife] has no available funds to supplement her only income from employment, the Court orders that [Wife] is now entitled to her forty-two (42%) percent interest in the said [DuPont] Savings and Investment Plan and Tax Reform Act Stock Ownership Plan without having to wait for the actual retirement of [Husband]. [A]n Order is being made pursuant to the authorization provided in the case of *Custer v. Custer,* 776 S.W.2d 92 (Tenn.App.1988).

On January 13, 1992, Wife filed a post-judgment motion requesting, among other things, that the court grant her "a Qualified Domestic Relations Order for the 42% interest against all benefits of [Husband] at his place of employment as allowed in the original Final Decree of Divorce." On April 6, 1992, the trial court entered an order addressing Wife's motion and also resolving the issues raised in a counterclaim filed by Husband. The order concluded with the following:

The attorneys for the parties are directed to prepare and present a Qualified Domestic[ ] Relations Order under the terms and conditions set out in the original divorce decree.

More than ten years after the entry of the trial court's order of April 6, 1992,[1] Wife submitted a proposed QDRO to the trial court for approval. On December 10, 2002, Husband filed an objection to the proposed QDRO, arguing that its entry was barred by the ten-year statute of limitations applicable to actions on judgments.

---

**1.** There is a suggestion in the record that the proposed QDRO was not filed earlier due to the death of Wife's divorce attorney.

*See* Tenn.Code Ann. § 28–3–110. The trial court, apparently being unaware of Husband's filed objection, signed and entered the proposed QDRO on December 11, 2002. On January 9, 2003, Husband filed a motion for relief from judgment, again arguing that the entry of the proposed QDRO was barred by the applicable statute of limitations:

> Although ordered to do so, [Wife] failed to act to collect that monetary judgment from [Husband's] pension and/or retirement plan, until the filing of a "Proposed" Order in November, 2002. The judgment of the Court in the Final Decree of Divorce as it relates to the monetary amount awarded to [Wife] was never acted upon within ten (10) years of the entry of that judgment contained in the Final Decree of Divorce entered August 29, 1991.

Just over a week after Husband filed his motion, DuPont's employee benefits coordinator sent a determination letter to Wife rejecting the proposed QDRO, noting as follows:

> We have determined that this order does not meet the requirements for a qualified domestic relations order as set forth in Section 414(p) of the Internal Revenue Code.
> Enclosed is a copy of the determination report which provides a detailed explanation of areas to address in an amended order. You should discuss this report with your attorney and consider the possibility of obtaining an amended order to correct the problems.

Attached to the determination letter is a four-page determination report. In the first paragraph of the report, the DuPont employee stated as follows:

> This order does not meet the requirements for a qualified domestic relations order (QDRO) as defined in Section 206(d)(3) of the Employee Retirement Income Security Act of 1974 (ERISA) and Section 414(p) of the Internal Revenue Code. The DuPont Pension and Retirement Plan, Title I (the Plan) will not distribute a portion of the participant's accrued benefit to the alternate payee until we receive an amended order that meets both Plan terms and federal requirements.

The complexity of qualified domestic relations orders is illustrated by the fact that the determination report is supplemented by a 17-page document entitled "Qualified Domestic Relations Orders/Guidelines for DuPont Pension and Retirement Plan (Defined Benefit Plan)."

On January 31, 2003, Wife filed a motion to amend the proposed QDRO. Wife stated that the amendment was necessary because of DuPont's rejection of her proposed QDRO. On February 20, 2003, the trial court denied Wife's motion to amend the proposed QDRO. The trial court entered a memorandum opinion and order, which recites, in part, as follows:

> It appears that [Wife] was given an award of 42% of [Husband's] DuPont assets in the 1991 Final Decree. In April of 1992 Chancellor Owens told the parties to submit a QDRO to carry out the 1991 Decree. Nothing was done in this regard for more than ten (10) years after the right was created in the Final Decree of Divorce. Indeed more than ten (10) years elapsed after the QDRO issue was mentioned in the April, 1992 Order.
> Under the holding of *Custer v. Custer*, 776 S.W.2d 92 (Tenn.Ct.App.1988), rehearing denied (1989), *perm.app.denied* (1989) *cert. denied*, 493 U.S. 933, 110 S.Ct. 324, 107 L.Ed.2d 314 (1989), [Wife] could have tried to force an immediate transfer. It is noted that the *Custer* divorce order was held to be a QDRO. [The 1991 Final Decree is not a QDRO.]

If [Wife] had pushed the issue in 1991 or 1992, the issue would have been handled then and not a problem now. The court does not know of any statutes which delay the finality of Final Decrees as it relates to assets. Those asset provisions are different from those orders regarding alimony, child support and custody, which issues by the terms of the statute are modifiable based upon change[d] circumstances.

[Wife] has lost her right to enforce the 1991 Final Decree as it respects the DuPont Assets. The submission of an Order to carry out the terms of the Decree is similar to a request for an execution or garnishment. If the Decree is not followed, *i.e.*, there is no compliance with its terms, then the order must be enforced by appropriate action. Here there was no Petition for Contempt filed nor any effort to execute upon the judgment for more than ten (10) years after it became final. Likewise, the judgment expired because it was not renewed within ten (10) years. This result appears to be harsh. However, it is the result required under the statute.

The trial court set aside the earlier-filed proposed QDRO and effectively barred Wife from obtaining the entry of a QDRO in this case.

## II.

The core question before us is whether an attempt to secure the approval of and entry of a QDRO is an "[a]ction[ ] on [a] judgment[ ]" within the contemplation of Tenn.Code Ann. § 28–3–110, which provides in pertinent part that

[the] following actions shall be commenced within ten (10) years after the cause of action accrued:

\* \* \*

(2) Actions on judgments and decrees of courts of record of this or any other state or government; . . . .

The trial court held that the submission of a proposed QDRO was akin "to a request for an execution or garnishment." We respectfully disagree with this conclusion.

■ Our standard of review with respect to this question of law is *de novo* with no presumption of correctness as to the trial court's decision. *Lavin v. Jordon*, 16 S.W.3d 362, 364 (Tenn.2000).

## III.

We have not found any cases in Tennessee addressing the issue presented in this case. To make matters more difficult, there is a dearth of authority from other jurisdictions. Our review of ERISA and what authority does exist convinces us that the ten-year statute of limitations codified at Tenn.Code Ann. § 28–3–110 is not a bar to Wife's efforts to secure the approval and entry of a QDRO.

■ Under ERISA, a QDRO "creates or recognizes the existence of an alternate payee's [2] right to . . . receive all or a portion of the benefits payable with respect to a participant under a plan. . . ." 29 U.S.C. § 1056(d)(3)(B)(i)(I) (1999). A proposed QDRO [3] under ERISA, on the other hand, is "any judgment, decree, or order" entered by a trial court that "relates to the provision of . . . marital property rights to a . . . former spouse . . ., and . . . is made

---

**2.** Under ERISA, an alternate payee may be, among others, a "former spouse . . . who is recognized by a domestic relations order . . . ." 29 U.S.C. § 1056(d)(3)(K).

**3.** ERISA uses the term "domestic relations order". *See* 29 U.S.C. § 1056(d)(3)(B)(ii). For ease of reference and continuity, we use the term "proposed QDRO" here and throughout the opinion.

pursuant to a State domestic relations law...." 29 U.S.C. § 1056(d)(3)(B)(ii). Typically, in Tennessee, a proposed QDRO is prepared by the parties' attorneys and submitted to the trial court for approval and entry,[4] after which, it is submitted to the administrator who administers the pension plan in question. The plan administrator must then determine if the proposed QDRO is "qualified" under ERISA. We agree with the following observation of the Supreme Court of Kansas:

> The federal statutes as they apply to state divorce practice and the adoption of a QDRO are extremely complex, detailed, and difficult to reconcile. A valid QDRO must meet the comprehensive requirements of at least three federal acts, as amended: the Internal Revenue Code, the Employee Retirement Income Security Act of 1974, and the Retirement Equity Act of 1984.

*In the Matter of the Marriage of Cray,* 254 Kan. 376, 390, 867 P.2d 291, 301 (1994). For the purpose of resolving the issue before us, however, we will limit our references to ERISA because the result would be the same under the other statutory schemes.

■ Under ERISA, there is no statute of limitations for the entry of a QDRO. *Murphy v. Murphy,* No. 283727, 1995 WL 749598, at *2 (Conn.Super. Ct., filed Dec. 1, 1995). The *Murphy* court observed that "[t]he intentional absence of a statute of limitations is bolstered by the fact that a [proposed] QDRO is defined as a judgment, decree or order which relates to marital property." *Id.* (citing 29 U.S.C. § 1056(d)(3)(B)(ii)(I)). The Connecticut court reasoned that "[c]onceivably, such an order could be entered at any time after judgment." *Id.*

■ Before an alternate payee becomes entitled to rights under an ERISA plan, the proposed QDRO must be qualified. *To be qualified, a proposed QDRO must comply with ERISA and be approved by the plan administrator. See* 29 U.S.C. § 1056(d)(3)(G)(i).[5] Under ERISA, a proposed QDRO complies with the applicable requirement

(C) ... only if such order clearly specifies—

(i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,

(ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,

(iii) the number of payments or period to which such order applies, and

(iv) each plan to which such order applies.

(D) A [proposed QDRO] ... meets the requirements of this subparagraph only if such order—

---

4. Apparently, there is no reason why a proposed QDRO could not be submitted to a plan administrator before it was signed by the court, and, once approved, then submitted to the court for signature. *See Murphy v. Murphy,* No. 283727, 1995 WL 749598, at *2 (Conn.Super. Ct., filed Dec. 1, 1995).

5. After a proposed QDRO is received
(I) the plan administrator shall promptly notify the participant and each alternate payee of the receipt of such order and the plan's procedures for determining the qualified status of domestic relations orders, and
(II) within a reasonable period after receipt of such order, the plan administrator shall determine whether such order is a qualified domestic relations order and notify the participant and each alternate payee of such determination.
29 U.S.C. § 1056(d)(3)(G)(i).

(i) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,

(ii) does not require the plan to provide increased benefits (determined on the basis of actuarial value), and

(iii) does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order.

29 U.S.C. §§ 1056(d)(3)(C), (D).

■ In the instant case, the judgment of divorce "create[d]" Wife's right to receive benefits under Husband's plan. *See generally* 29 U.S.C. § 1056(d)(3)(B)(i)(I). The proposed QDRO simply "recognizes" that right. *See generally id.* However, until the plan administrator approves Wife's proposed QDRO, her right to receive benefits under Husband's plan, even though set forth in a validly-entered judgment of divorce, is not enforceable under ERISA. For example, Wife cannot simply send Du-Pont a certified copy of her judgment of divorce and successfully demand payment of 42% of Husband's benefits. This is because the judgment does not contain the ERISA-mandated information.

The Court of Appeals of Kansas, in the case of *In the Matter of the Marriage of Cray*, 18 Kan.App.2d 15, 846 P.2d 944 (1993), *rev'd on other grounds*, 254 Kan. 376, 867 P.2d 291 (1994), noted the interplay between the power of a trial court to decree the division of a pension plan and the role of a plan administrator in determining whether a proposed QDRO is in fact "qualified" under ERISA and other pertinent federal statutes:

Counsel repeatedly refer to a qualified domestic relations order in their briefs. However, a review of the record does not disclose whether a qualified domestic relations order was ever prepared or approved by a pension plan administrator. The trial court has the power to order the parties to enter into a qualified domestic relations order, which is a domestic relations order adhering to the requirements set out under 26 U.S.C. § 414(p)(2),(3) (1988) of the Tax Code and 29 U.S.C. § 1056(d)(3)(C), (D) (1988) of the Employment Retirement Income Security Act (ERISA). Such an order is not a *qualified* domestic relations order until it is approved by the plan administrator, and the plan administrator is not bound by an unapproved domestic relations order. 3 Valuation & Distribution of Marital Property § 45.27(2), p. 45–123 (1992); 26 U.S.C. § 414(p)(7)(C); 29 U.S.C. § 1056(d)(3)(H)(iii).

*Id.* at 20–21, 846 P.2d at 949 (emphasis in original).

In *Duhamel v. Duhamel*, 188 Misc.2d 754, 729 N.Y.S.2d 601 (N.Y.Sup.Ct.2001), a New York supreme court was faced with a question not dissimilar to the one before us. The parties in *Duhamel* were divorced on December 19, 1986. *Id.* at 754, 729 N.Y.S.2d at 601. The judgment of divorce incorporated the separation agreement, which recognized the former wife's right to receive a portion of her former husband's retirement benefits and granted the former wife a proposed QDRO with respect to those benefits. *Id.* at 754–55, 729 N.Y.S.2d at 601–02. Some fourteen years after the judgment of divorce, "after learning of the [former husband's] imminent retirement," the former wife "sought entry of the proposed QDRO". *Id.* at 755, 729 N.Y.S.2d at 602. The former husband contended that his former wife's "request to have [the] Court enter a QDRO more than fourteen years after the entry of the parties' [j]udgment of [d]ivorce is barred

by the[ ] [applicable six-year] statutes of limitations." *Id.*

The court in *Duhamel* concluded "that the entry of the [proposed] QDRO is governed by [the applicable statute of limitations]"; however, the court emphasized that the "limitation period does not begin to run until a cause of action or claim has accrued." *Id.* In *Duhamel,* the court determined that "since [the former wife's] right to receive a distribution under the [former husband's] retirement plan did not accrue until after her former husband reached pay status, the [applicable statute of limitations] ... did not begin to run until his retirement date." *Id.* at 756, 729 N.Y.S.2d at 603.

In subsequent litigation involving the Duhamels, the same New York supreme court characterized "an action to compel entry of QDRO" as one "to compel the other [spouse] to perform a mere ministerial task necessary to distribute funds previously allocated by the parties' own binding agreement." *Duhamel v. Duhamel,* 194 Misc.2d 100, 101, 753 N.Y.S.2d 673 (N.Y.Sup.Ct.2002).

We agree with the result reached in the first *Duhamel* decision. Unlike *Duhamel,* however, there is no indication in the instant case that Husband has retired. For that reason, we do not have to reach the "accrual" rationale behind the New York court's decision.

## IV.

■ The division of a plan that falls within the province of ERISA involves a number of individuals/entities. In the absence of an agreement between a "participant" and an "alternate payee," it is the prerogative of a court to decide how a participant's pension plan should be divided between the participant and his or her spouse, *i.e.,* the alternate payee. However, regardless of whether the parties agree

to a division or the court has to decree one, an order must be entered memorializing the division. Even assuming the valid entry of an appropriate order, that order cannot be *enforced* in the absence of action by the plan administrator. While it is up to a court to decide how a pension plan is equitably divided in a divorce, it is clear, beyond any doubt, that, under ERISA, it is up to the plan administrator to determine whether the proposed QDRO complies with the terms of ERISA, *i.e.,* whether it is a "qualified" domestic relations order. Once a plan administrator determines that a proposed QDRO meets the requirements of ERISA, be it before or after the court signs the proposed QDRO, the division decreed by the court, as memorialized in the now-approved QDRO, can be enforced, as later or previously entered by the trial court, against the plan and its administrator; but, before the plan administrator finds and reports that the domestic relations order is qualified, the division decreed by the court *cannot be enforced*—regardless of what the court, the parties, or one of the parties, does or attempts to do—without resort to the provisions of ERISA. ERISA and the other pertinent statutes stand in the way of enforcement until the plan administrator acts favorably upon the proposed QDRO submitted to it.

■ The plan administrator in the instant case has yet to approve the proposed QDRO. Hence, the trial court's decree cannot be enforced against the "holder of the purse strings." Any attempt to "enforce" the trial court's validly-entered division of Husband's pension plan would be futile. We conclude from all of this that the approval of the proposed QDRO is adjunct to the entry of the judgment of divorce and not an attempt to "enforce" the judgment. It is an essential act to bring to fruition the trial court's decree regarding a division

of Husband's interest in the DuPont pension plan. Until the proposed QDRO is approved by the plan administrator and entered by the trial court, the act of the trial court in dividing the pension plan *is not complete and hence not enforceable.* It can be accurately described as inchoate in nature. It follows that Wife's attempt to obtain the approval of the plan administrator of the proposed QDRO and the entry of that order is not an action to enforce the divorce judgment, and hence is not barred by the ten-year statute of limitations.

## V.

The judgment of the trial court is reversed and this case is remanded for further proceedings consistent with this opinion. Costs on appeal are taxed to the appellee, Walter B. Jordan.