2011 ND 78

**Russell E. BLOMDAHL, Plaintiff and Appellee**

v.

**Mary Ellen BLOMDAHL, Defendant and Appellant.**

**No. 20100053.**

Supreme Court of North Dakota.

April 13, 2011.

Clint Derrick Morgenstern (argued) and Thomas V. Omdahl (on brief), Grand Forks, N.D., for plaintiff and appellee.

Mark Andrew Grainger, East Grand Forks, MN, for defendant and appellant.

CROTHERS, Justice.

[¶ 1] Mary Blomdahl appeals from a district court order denying her motion to find Russell Blomdahl in contempt for failing to comply with a 1993 divorce judgment awarding her personal property. We affirm the district court's order, concluding the district court did not err in denying her motion because a contempt of court motion cannot be maintained based on a divorce judgment that expired after ten years without being renewed.

I

[¶ 2] Russell Blomdahl and Mary Blomdahl entered a stipulation that was incorporated into a February 1993 divorce judgment, which provided:

"9. *Retirement Accounts.* [Mary Blomdahl] shall have sole and exclusive use, control and possession of the retirement, savings, and checking accounts currently held solely in her name.

[Russell Blomdahl] shall have sole and exclusive use, possession and control of the retirement, savings, checking, and insurance accounts solely in his name *with the exception that [Mary Blomdahl] will have a 90 percent interest in [Russell Blomdahl's] retirement accounts with Piper, Jaffray, and Aid Association Lutherans. . . .*"

(Emphasis added.)

[¶ 3] Between the entry of the divorce judgment and 2009, Mary Blomdahl did not execute on the judgment, commence a separate action on the judgment, or obtain a qualified domestic relations order. In January 2009, Mary Blomdahl demanded the 90 percent interest in the retirement accounts, and Russell Blomdahl refused. In April 2009, Mary Blomdahl moved the district court for an order to show cause under N.D.C.C. § 14–05–25.1 to find Russell Blomdahl in contempt and to enforce the distribution of the interest in the retirement account awarded in their 1993 divorce judgment. Russell Blomdahl resisted her motion based on arguments that in February 1993, he and Mary Blomdahl entered into a separate out-of-court agreement; he contended that the funds had been transferred, commingled into other accounts, or used up over time; and he asserted he was no longer required to do so due to the passage of time. The district court found that Mary Blomdahl had not agreed to return to Russell Blomdahl any retirement accounts including those in Piper, Jaffray and Aid Association Lutherans. The court did not address Russell Blomdahl's contention regarding the current status of the retirement accounts, and instead ruled the divorce judgment was no longer enforceable.

[¶ 4] The district court denied Mary Blomdahl's contempt motion. The court held the February 1993 divorce judgment ceased to be enforceable for distribution of the retirement accounts after ten years, absent renewal of the judgment. Relying on N.D.C.C. §§ 28–20–13, 28–20–23, and 28–20–35, the court held the provision awarding Mary Blomdahl an interest in Russell Blomdahl's retirement accounts was no longer enforceable due to the passage of time. The court concluded that since the divorce judgment granting her the property was entered in February 1993, in the absence of a renewal, she no longer could enforce that portion of the judgment since her motion was "well beyond the ten year time period."

## II

[¶ 5] Mary Blomdahl argues her contempt motion under N.D.C.C. § 14–05–25.1 is not an "action" under N.D.C.C. § 28–01–15, which provides a ten-year statute of limitations for "[a]n action upon a judgment or decree." Alternatively, she argues that if her motion is an "action" under N.D.C.C. § 28–01–15, the ten-year limitations was tolled until the obligation and award accrued, matured or otherwise ripened. She asserts the award did not mature until she either reached retirement age or discovered Russell Blomdahl had taken full distribution of the specified retirement accounts, depriving her of her 90 percent interest.

[¶ 6] Mary Blomdahl brought her motion for contempt under N.D.C.C. § 14–05–25.1, which provides that "[f]ailure to comply with the provisions of a separation or divorce decree relating to distribution of the property of the parties constitutes contempt of court." We have held that provision provides continuing jurisdiction for contempt proceedings to enforce divorce judgments. *See Giese v. Giese*, 2004 ND 58, ¶¶ 6–7, 676 N.W.2d 794. "Civil contempt requires a willful and inexcusable intent to violate a court order." *Id.* at ¶ 8. Mary Blomdahl essentially argues that un-

der N.D.C.C. § 14–05–25.1, her contempt motion is not "[a]n action upon a judgment," under the ten-year statute of limitations in N.D.C.C. § 28–01–15(1).

[¶ 7] North Dakota law distinguishes between "actions" and "special proceedings." Section 32–01–01, N.D.C.C., states that "[r]emedies in the courts of justice are divided into: 1. Actions. 2. Special proceedings." Section 32–01–02, N.D.C.C., defines an action as "an *ordinary proceeding* in a court of justice, by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (Emphasis added.) Section 32–01–04, N.D.C.C., provides that "[a] special proceeding is *any remedy other than an action.*" (Emphasis added.) *See* N.D.R.Civ.P. 81 and "Table A" (designating contempt proceedings under N.D.C.C. ch. 27–10, as "special statutory proceedings," excepted from the rules "insofar as they are inconsistent or in conflict with the procedure and practice provided by these rules").

[¶ 8] Section 27–10–01.1(1)(g), N.D.C.C., says contempt is any other act specified by law as a ground for contempt. When N.D.C.C. §§ 14–05–25.1 and 27–10–01.1(1) and N.D.C.C. ch. 32–01 are construed together, a contempt proceeding brought under N.D.C.C. § 14–05–25.1 is a special statutory proceeding rather than a separate "action" upon a judgment for purposes of N.D.C.C. § 28–01–15(1). *Cf. City of Fargo v. Annexation Review Comm'n,* 148 N.W.2d 338, 346 (N.D.1966) (writs of certiorari and mandamus proceedings are "special proceedings," not included in the term "actions" for review purposes). Because we conclude Mary Blomdahl's contempt motion was not an action on the judgment, we do not reach her alternate arguments regarding tolling of the statute of limitations and application of a discovery rule. Nonetheless, even though Mary Blomdahl's motion is not "[a]n action upon the judgment," we conclude the district court did not err in denying her motion.

[¶ 9] It is axiomatic that for a contempt finding under N.D.C.C. § 14–05–25.1, as further contemplated in N.D.C.C. ch. 27–10, a violation of a valid and existing court order, judgment or decree must exist. *See State v. Sevigny,* 2006 ND 211, ¶ 37, 722 N.W.2d 515 ("Intentional disobedience of a court order constitutes contempt, and absent a showing that an order is transparently invalid or frivolous, the order must be obeyed until stayed or reversed by orderly review."); *cf. Long v. Brooks,* 6 Kan.App.2d 963, 636 P.2d 242, 245 (1981) (former spouse could not be held in contempt for failing to comply with property settlement in extinguished judgment); 27C C.J.S. *Divorce* § 950 (2005) ("A spouse cannot be punished for contempt for failing to obey a void order as to the property or a judgment that has been totally extinguished."). "In its usual sense, contempt comprehends a despising of the authority, justice, or dignity of a court." *Van Dyke v. Van Dyke,* 538 N.W.2d 197, 203 (N.D.1995). "Although contempt powers are inherent to courts, the legislature ... in North Dakota has limited[ ] the categories to which contempt orders may apply." *Id. See* N.D.C.C. § 27–10–01.1(1) (defining contempt of court). We therefore consider whether there was a valid and existing provision of the divorce judgment for which its violation may properly be considered a contempt of court.

[¶ 10] Statutory interpretation presents a question of law, which is fully reviewable on appeal. *M.M. v. Fargo Pub. Sch. Dist. No. 1,* 2010 ND 102, ¶ 12, 783 N.W.2d 806; *Great Western Bank v. Willmar Poultry Co.,* 2010 ND 50, ¶ 7, 780 N.W.2d 437. "This Court's primary objec-

tive in interpreting a statute is to ascertain legislative intent." *M.M.*, at ¶ 12 (quotation omitted). "Statutes are construed as a whole and are harmonized to give meaning to related provisions." *Willmar Poultry*, at ¶ 7 (quotation omitted); N.D.C.C. § 1–02–07. "In construing statutes, we consider 'the context of the statutes and the purposes for which they were enacted.'" *Willmar Poultry*, at ¶ 7 (quoting *Falcon v. State*, 1997 ND 200, ¶ 9, 570 N.W.2d 719). We construe statutes to avoid absurd or illogical results. *See M.M.*, at ¶ 12; *County of Stutsman v. State Historical Soc'y*, 371 N.W.2d 321, 325 (N.D.1985).

[¶ 11] Section 28–20–35, N.D.C.C., provides for the cancellation of a judgment which has not been renewed: "After ten years after the entry of a judgment that has not been renewed, or after twenty years after the entry of a judgment that has been renewed, the judgment must be canceled of record." Under N.D.C.C. § 28–20–13, once entered and docketed,

> "[t]he judgment is a lien on all the real property, except the homestead, of every person against whom the judgment is rendered, which the person may have in any county in which the judgment is docketed at the time of docketing or which the person thereafter acquires in the county, *for ten years* from the time of docketing the judgment in the county in which it was rendered."

(Emphasis added.) Additionally, under N.D.C.C. § 28–20–23, a judgment may be renewed upon the entry and docketing of an affidavit of renewal of a judgment, extending the lien for an additional ten years.

[¶ 12] This Court's decision in *Leifert v. Wolfer*, 74 N.D. 746, 759–60, 24 N.W.2d 690, 696 (1946), is instructive. *Leifert* was a quiet title action and involved execution based on a divorce judgment, in which the defendant's husband had been required to pay $364 for bills due, attorneys' fees and costs, in addition to a monthly amount for child maintenance and alimony. *Id.* at 749, 24 N.W.2d at 691. While the special execution was issued in 1945, the 1931 divorce judgment had not been renewed, expiring in 1941. *Id.* at 760, 24 N.W.2d at 696.

[¶ 13] Relevant to the present case, the Court in *Leifert* held that although the defendant had a judgment against her husband for $364, which had become a lien on his property, the execution issued thereunder and subsequent sale and confirmation did not give the defendant any interest in the real property sold. *Id.* The Court held the judgment could not be executed upon because it had expired after ten years without renewal and had become extinct. *Id.* The Court also observed that expiration of the judgment lien did not alter the alimony obligation and that the court had continuing jurisdiction to modify alimony. *Id.* Thus, the Court in *Leifert* refused to enforce a monetary award by execution in a divorce judgment when the divorce judgment had expired. *See also Fuson v. Schaible*, 494 N.W.2d 593, 597 (N.D.1992) ("Renewal requirements could apply . . . to a divorce judgment for a fixed amount in the division of property or settlement of debts."). Although Mary Blomdahl claims her contempt motion is not an action barred by the ten-year statute of limitations, her argument misconstrues the district court's decision.

[¶ 14] Here, the district court held there was no contempt because the provision of the divorce judgment, which had awarded her personal property as opposed to a continuing support obligation, had expired. Because the February 1993 judgment awarding Mary Blomdahl the retirement accounts expired after ten years without being renewed, the district court was without an enforceable judgment to

enter an order finding Russell Blomdahl in contempt under N.D.C.C. § 14–05–25.1.

## III

[¶ 15] Our disposition makes it unnecessary to address Mary Blomdahl's issue whether the time for bringing a contempt motion is tolled. Further, it would be advisory to determine whether a separate action arose based on Russell Blomdahl's conduct subsequent to entry of the divorce judgment or whether a separate action can be maintained on an expired judgment. *Cf. Union Nat. Bank of Grand Forks v. Ryan,* 23 N.D. 482, 486–87, 137 N.W. 449, 450 (1912). The district court order is affirmed.

[¶ 16] DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.

MARING, Justice, dissenting.

[¶ 17] I respectfully dissent. I disagree with the majority's conclusion the ten-year statute of limitation on enforcement of judgments precludes Mary Blomdahl from bringing a contempt motion against Russell Blomdahl for his failure to pay her the ninety percent interest in his retirement accounts. *Majority,* at ¶ 14. I am of the opinion that the ten-year statute of limitations did not begin to run until Russell Blomdahl's actual retirement some time in 2003, making the February 1993 divorce judgment enforceable as of Mary Blomdahl's April 2009 contempt motion. Therefore, I would reverse the trial court's decision and remand for further findings on whether Russell Blomdahl's failure to pay Mary Blomdahl her ninety percent interest in his retirement accounts constitutes "contempt of court" under N.D.C.C. § 27–10–01.1.

## I

[¶ 18] The parties' divorce action commenced in October 1991. The trial court held a divorce hearing in February 1993 and entered a divorce judgment, which incorporated the parties' stipulated agreement regarding the distribution of the parties' retirement accounts:

9. *Retirement Accounts.* [Mary Blomdahl] shall have sole and exclusive use, control and possession of the retirement, savings, and checking accounts currently held solely in her name. [Russell Blomdahl] shall have sole and exclusive use, possession and control of the retirement, savings, checking and insurance accounts solely in his name with the exception that *[Mary Blomdahl] will have a 90 percent interest in [Russell Blomdahl's] retirement accounts with Piper, Jaffray, and Aid Association Lutherans.*

(Emphasis added.) The only evidence in the record indicating the value of the Piper Jaffray and Aid Association Lutherans retirement accounts is an "Agreement for the Equitable Division of Property of Russell [and] Mary Blomdahl," dated October 1991. The agreement indicates that, as of October 1991, Russell Blomdahl had $20,834 in his Piper Jaffray retirement account and $97,970 in his Aid Association Lutherans account, for a total of $118,804. In addition, Russell Blomdahl had $12,238 in a number of miscellaneous retirement accounts, solely in his name, in which Mary Blomdahl was not awarded any interest.

[¶ 19] During the August 25, 2009, contempt proceedings hearing, Russell Blomdahl testified he began transferring money between the retirement accounts in 1994 in order to increase their value. He further testified he did not actually begin drawing on the two accounts specified in the divorce judgment until some time in 2003,

although "[i]t may have been 2005 when [he] officially retired." Whether Russell Blomdahl retired in 2003 or in 2005, however, does not impact the enforceability of the 1993 divorce judgment for purposes of Mary Blomdahl's contempt proceedings. Even if the ten-year statute of limitations would have started to run in 2003 when Russell Blomdahl first began drawing money on the two retirement accounts, the statute of limitations would not have expired as of April 2009 when Mary Blomdahl initiated her contempt proceedings. Therefore, I am of the opinion the trial court erred in concluding Mary Blomdahl could not enforce the 1993 divorce judgment by contempt proceedings because "she would be precluded from executing or suing on the judgment under North Dakota law."

II

[¶ 20] The trial court found Mary Blomdahl "was immediately entitled to establish exclusive use and control over" the ninety percent interest in Russell Blomdahl's retirement accounts awarded to her by the 1993 divorce judgment. The court reasoned she could have established control by obtaining a qualified domestic relations order ("QDRO") or by "taking legal or other action to assert that control, even if that meant some financial penalty for early withdrawal." In addition, the trial court concluded that "[u]nlike a pension plan that had not yet matured, these [two retirement] accounts could have been accessed and exclusively controlled by Mary [Blomdahl] at the time of judgment." Neither the law, the record, nor public policy supports the trial court's conclusion.

[¶ 21] Our Court has held that when a divorce judgment provides for payments of child or spousal support in installments, "the right to enforcement accrues upon each installment as it matures, and [ ] the statute of limitations begins to run against each installment from the time fixed for its payment." *Fuson v. Schaible,* 494 N.W.2d 593, 597 (N.D.1992) (addressing when the statute of limitations begins to run on judgments for child support payments); *see* N.D.C.C. § 14–08.1–05 (stating judgments for child support may not be canceled under N.D.C.C. § 28–20–35); *see also Richter v. Richter,* 126 N.W.2d 634, 638 (N.D.1964) (addressing when the statute of limitations begins to run on judgments for spousal support payments). We have long cautioned that having the statute of limitations begin running when the divorce judgment is entered may produce the absurd situation of "a right of action which may be barred before the cause of action has accrued." *Richter,* 126 N.W.2d at 638 (quoting *Simmons v. Simmons,* 67 S.D. 145, 290 N.W. 319, 320 (1940)); *see also Starrett v. Starrett,* 24 S.W.3d 211, 214 (Mo.Ct.App.2000) (Dowd, J., concurring) (explaining that "life insurance benefits and pensions are often included in property settlements, yet are, by their nature, ongoing and payment may not begin during the ten-year period following judgment"). Here, the trial court's conclusion Mary Blomdahl should have moved to enforce payment of her ninety percent interest in Russell Blomdahl's retirement benefits when he had yet to retire and receive any benefits himself reaches a similarly absurd result because it deprives Mary Blomdahl of her interest in the retirement payments before these payments became due. *See Jordan v. Jordan,* 147 S.W.3d 255, 262 (Tenn.Ct.App.2004) (citing *Duhamel v. Duhamel,* 188 Misc.2d 754, 756, 729 N.Y.S.2d 601 (N.Y.Sup.Ct.2001)) (holding the statute of limitations does not begin to run until the owning spouse reaches a pay status); *see also In re Weber,* 322 Mont. 324, 95 P.3d 694, 698 (2004) (stating the statute of limitations does not begin to run until payment is due and holding former

wife could not commence an action to enforce a divorce judgment awarding her a portion of former husband's retirement benefits before he actually retired and the benefits became due); *Patricia A.M. v. Eugene W.M.*, 24 Misc.3d 1012, 1015–16, 885 N.Y.S.2d 178 (2009) (holding former wife's cause of action accrued at the time of former husband's failure to pay her the portion of his retirement benefits to which she was entitled, which was no earlier than the date of his actual retirement).

[¶ 22] In *In re Weber*, the Montana Supreme Court addressed a factual situation similar to the one presented here. The parties terminated their marriage and, in a January 1992 divorce decree, the trial court awarded the wife an equal share in her former husband's retirement benefits. *Weber*, 95 P.3d at 696. At the time of the decree, neither party had retired. *Id.* The husband retired and began drawing on his retirement account in early 2002, but did not notify his former wife of his retirement and did not make any payments to her as required by the decree. *Id.* As a result, in 2003, the wife moved to enforce that portion of the divorce decree, which awarded her a share in her former husband's retirement benefits. *Id.* The trial court granted the wife's motion to enforce the 1992 judgment and explained the statute of limitations was not a bar to her action because "while some time had elapsed since 1992, . . . the Decree was intended to extend to the relevant issue-retirement-which had recently occurred." *Id.* (quotation omitted). The husband appealed, arguing his former wife's motion to enforce the divorce judgment was time-barred. *Id.* at 696, 698. He asserted the motion to enforce was stale because his former wife did not bring the motion until eleven years after the divorce decree and, under Montana law, all actions on judgments and decrees must be brought within ten years. *Id.* at 698; *compare* Mont.

Code Ann. § 27–2–201(1) (providing that the period prescribed for the commencement of an action upon a judgment or decree is within ten years) *with* N.D.C.C. § 28–01–15(1) (providing that an action upon a judgment or a decree must be commenced within ten years).

[¶ 23] The Montana Supreme Court rejected the husband's argument and upheld the trial court's decision to grant the wife's motion to enforce the judgment. *Weber*, 95 P.3d at 698. Analogizing the wife's action to actions for enforcement of child support payments, the Montana Supreme Court held the ten-year statute of limitations did not begin to run until the obligation became due. *Id.* The Court explained the wife was not entitled to her share in her former husband's retirement benefits until the husband retired in early 2002 and began collecting the benefits himself. *Id.* To hold otherwise, the Court noted, "would reach the absurd conclusion that [the wife] should be deprived of the benefits before the benefits were due her." *Id.*

[¶ 24] Similarly here, I am of the opinion the ten-year statute of limitations did not begin to run until Russell Blomdahl reached pay status, which, according to his trial testimony, was some time in 2003. Once Russell Blomdahl began drawing benefits from the two retirement accounts, Mary Blomdahl became entitled to her ninety percent interest in those benefits employing the value as of the date of the divorce judgment. Russell Blomdahl's failure to pay Mary Blomdahl the benefits she was rightfully due under the divorce judgment was sufficient ground for her to bring a motion for contempt. Mary Blomdahl moved for contempt in April 2009, only six years after she became entitled to seek enforcement of her interest in Russell Blomdahl's retirement benefits. Therefore, the trial court clearly erred in deny-

ing Mary Blomdahl's motion for contempt on the ground the 1993 divorce judgment was no longer enforceable under the ten-year statute of limitations on enforcement of judgments.

[¶ 25] Moreover, the trial court based its erroneous conclusion on findings not supported by the record. The trial court found Mary Blomdahl was "immediately entitled to establish exclusive use and control" over her ninety percent interest in Russell Blomdahl's retirement accounts because "[u]nlike a pension plan that had not yet matured, these accounts could have been accessed and immediately controlled by Mary [Blomdahl] at the time of judgment." The record, however, is void of any evidence establishing Mary Blomdahl had immediate access to the two retirement accounts. The parties' 1993 divorce judgment simply states that Mary Blomdahl is entitled to a ninety percent interest in Russell Blomdahl's retirement accounts in Piper Jaffray and Aid Association Lutherans. The judgment does not set forth the amount of money in the accounts, the type of retirement accounts, or the method of distribution. It does not require an acceptable qualified domestic relations order. Yet, despite the lack of any direction in the 1993 divorce judgment regarding the distribution of the retirement accounts, the trial court concluded Mary Blomdahl could have accessed the accounts at the time of judgment by obtaining a QDRO or "taking legal or other action … even if that meant some financial penalty for early withdrawal." I cannot agree with the trial court's conclusion.

[¶ 26] In *Giese v. Giese*, we held that a former wife's right to receive a twenty percent portion of her former husband's retirement benefits was created by the divorce judgment and was not contingent upon effecting an acceptable QDRO. 2004 ND 58, ¶ 9, 676 N.W.2d 794. We explained the trial court correctly found the former husband in contempt for willfully violating the divorce judgment by receiving and retaining the full retirement benefits, once he retired, and thus denying his former wife her twenty percent interest in those benefits. *Id.* Similarly, the record shows Mary Blomdahl's ninety percent interest in Russell Blomdahl's retirement benefits was awarded by the parties' 1993 divorce judgment and was not made contingent upon obtaining a QDRO. "A QDRO is a judgment, decree, or order, relating to child support, spousal support, or marital property rights, which creates or recognizes the existence of an alternate payee's right to receive all or a portion of the benefits payable with respect to a participant under a plan." *Id.* The ultimate responsibility of the entry of a necessary QDRO lies with the trial court, not the parties. *Fry v. Fry*, 18 Neb.App. 75, 775 N.W.2d 438, 444 (2009) (holding the ultimate responsibility that a proper divorce decree is entered, and for entry of a QDRO if the court determines the situation so requires, rests upon the trial court); *see also* 2 *Equit. Distrib. of Property* 3d § 6:20 (stating trial court should take all reasonable measures to ensure that QDROs are drafted and entered as soon as possible after entry of the divorce decree). Thus, the trial court erred by shifting the responsibility for obtaining a QDRO from the trial court that entered the 1993 divorce decree to Mary Blomdahl, a party to the decree. Further, under ERISA, there is no statute of limitations for the entry of a QDRO. *See Jordan*, 147 S.W.3d at 260 (noting the intentional absence of a statute of limitations for the entry of a QDRO under ERISA); *see also Marshall v. Priess*, 99 S.W.3d 150, 157 (Tex.Ct.App.2002) (holding the entry of QDRO is not subject to statute of limitations on enforcement of judgments); *Ochoa v. Ochoa*, 71 S.W.3d 593, 596–97

(Mo.2002) (*en banc*) (explaining statutory presumption that judgment is satisfied after ten years does not prevent an entry of QDRO past the ten-year period). Conceivably then, such an order could be entered at any time after the judgment and the trial court's conclusion Mary Blomdahl should have obtained one immediately following the judgment is in error.

[¶ 27]   In addition, I cannot agree with the trial court's conclusion Mary Blomdahl could have taken "legal or other action" to establish exclusive control over her interest in Russell Blomdahl's retirement account, "even if that meant some financial penalty for early withdrawal." The trial court fails to specify what kind of "legal or other action" Mary Blomdahl could have taken to enforce her interest in the retirement benefits. She clearly could not have sent a certified copy of the divorce judgment to Piper Jaffray or Aid Association Lutherans demanding payment of ninety percent of Russell Blomdahl's retirement benefits. *See, e.g., Jordan,* 147 S.W.3d at 261 (stating the divorce judgment created wife's right to receive benefits under the plan, but explaining wife could not receive benefits under the plan until the plan administrator approves a proposed QDRO). Neither could she bring an action to receive her share of Russell Blomdahl's retirement benefits before he actually retired and those benefits became due. *See, e.g., Weber,* 95 P.3d at 698 (holding wife could not have moved to enforce payment of husband's retirement benefits before husband actually retired and began receiving benefits). Moreover, nothing in the record indicates Russell Blomdahl's interest in the two retirement accounts was subject to early withdrawal. *Contra Shaver v. Kopp,* 545 N.W.2d 170, 175 (N.D. 1996) (noting that the "record shows Kopp is allowed to withdraw his employer's contributions, as well as his own, at any time, subject to taxes and penalties"). Having

the ability to transfer money from one retirement account to another is different from having the ability to access the money in those accounts before reaching the requisite retirement age. Thus, based on the record, requiring Mary Blomdahl to take *any* action, "even if that meant some financial penalty for early withdrawal," seems not only impractical, but also contrary to the principle of equitable distribution of the parties' property in divorce proceedings. *See generally,* N.D.C.C. § 14–05–24 (providing for the equitable distribution of the property and debts of the parties).

[¶ 28]   Finally, the trial court's conclusion Mary Blomdahl could not collect her ninety percent interest in Russell Blomdahl's retirement accounts, awarded to her by the parties' divorce judgment, runs afoul of public policy. The trial court's denial of Mary Blomdahl's motion for contempt on the ground the ten-year statute of limitations makes the judgment unenforceable focuses only on finality and ignores the realities of divorce judgments. Many of these judgments contemplate obligations that are paid over extended periods of time or do not even become due and payable during the entire ten years permitted for renewal. The primary examples are life insurance benefits and retirement benefits, which are often included in property divisions. The trial court's decision in the present case implies "public policy favors allowing unsatisfied judgments to die on the vine for the sake of completion." *Dahlin v. Kroening,* 784 N.W.2d 406, 412 (Minn.Ct.App.2010). However, as the Minnesota Court of Appeals explained in *Kroening,* I too am of the opinion public policy not only encourages finality, but also encourages meaningfulness of judicial judgments, such as the one Russell Blomdahl failed to satisfy. *See id.*

[¶ 29] Based on the law, the record, and public policy considerations, the ten-year statute of limitations did not begin to run until Russell Blomdahl's actual retirement some time in 2003, making the February 1993 divorce judgment enforceable as of Mary Blomdahl's April 2009 motion for contempt.

### III

[¶ 30] The majority holds the trial court did not err in denying Mary Blomdahl's contempt motion because the judgment awarding her an interest in Russell Blomdahl's retirement benefits expired after ten years, thus leaving the trial court "without an enforceable judgment to enter an order finding Russell Blomdahl in contempt under N.D.C.C. § 14–05–25.1." *Majority*, at ¶ 14. The trial court concluded, and the majority seems to agree, that "[i]f there is no longer any legal authority to execute on the judgment or to bring an action on the judgment, it stands to reason that it cannot be enforced by contempt proceedings either." I cannot agree.

[¶ 31] The North Dakota Legislative Assembly enacted N.D.C.C. § 14–05–25.1 in 1985 "to correct the law because of a decision by the [S]upreme [C]ourt." *Hearing on H.B. 1486 Before the Senate Judiciary Comm.*, 49th N.D. Legis. Sess. (Feb. 19, 1985) (testimony of Senator Wayne Stenehjem) ["Hearing on H.B. 1486"]. Section 14–05–25.1 provides, in part: "Failure to comply with the provisions of a separation or divorce decree relating to distribution of the property of the parties constitutes contempt of court" and was obviously enacted with the intent to correct this Court's decision in *Seablom v. Seablom*, 348 N.W.2d 920 (N.D.1984).

[¶ 32] In *Seablom*, this Court held that civil contempt was an improper remedy for the enforcement of a distribution of property in divorce cases. 348 N.W.2d at 925.

The Court stated civil contempt and execution "are mutually exclusive procedures for enforcement of a judgment" and explained that "[w]hen a writ of execution is returned unsatisfied, a party may later execute on the debtor's property because the remedy remains available for 10 years after the entry of the judgment." *Id.* Both the legislative history and the plain language of N.D.C.C. § 14–05–25.1 indicate that by enacting section 14–05–25.1, the legislature intended to "correct the law" created by *Seablom* and to make civil contempt a proper remedy for the enforcement of a distribution of property in divorce cases. *See Hearing on H.B. 1486, supra* (testimony of Senator Wayne Stenehjem) (stating that by enacting N.D.C.C. § 14–05–25.1, the legislature would make it a contempt of court "if one party in a divorce does not abide by the orders of the court"); N.D.C.C. § 14–05–25.1 (providing that a party's failure to comply with a provision of a divorce decree relating to property distribution constitutes contempt of court). The legislative history further indicates that despite some early concerns about the absence of a time element in the language of N.D.C.C. § 14–05–25.1, the legislature chose not to place a time limit on contempt actions to enforce provisions of a divorce judgment. *See Hearing on H.B. 1486 Before the House Judiciary Comm.*, 49th N.D. Legis. Sess. (Feb. 4, 1985) (testimony of Gerald Shafer) (expressing concern over the lack of a time element in the proposed language of N.D.C.C. § 14–05–25.1); *see also* N.D.C.C. § 14–05–25.1. Arguably then, if a party fails to comply with a divorce decree provision relating to the distribution of property, the aggrieved party has the right to bring a civil contempt action and that right is not subject to any time limitations.

[¶ 33] Our public policy of encouraging settlements in divorce proceedings is con-

sistent with the legislature's decision to make contempt actions available to enforce divorce judgments without the constraints of N.D.C.C. § 28–20–35. *See Kramer v. Kramer*, 2006 ND 64, ¶ 6, 711 N.W.2d 164 (stating this Court encourages settlements between divorcing parties). We have held that when parties to a divorce voluntarily stipulate to a particular disposition of their marital property, a trial court should ordinarily enter a judgment consistent with the parties' settlement agreement. *Id.* There are many reasons why divorcing parties choose to structure their property settlement a certain way and it is difficult to imagine that when the parties' settlement includes the division of retirement benefits, the parties did not contemplate collecting on those benefits beyond the ten years allotted for collecting on a money judgment.

[¶ 34] Here, the divorce judgment incorporated the parties' stipulated agreement, which included the division of Russell Blomdahl's retirement benefits. At trial, Mary Blomdahl testified she did not ask Russell Blomdahl for her ninety percent interest in the retirement accounts until January 2009. When asked why she waited until 2009, she explained:

> Well mostly because I had looked at their originals of those that we had decided on, the Pipper–Jaffray and AAL, and it said "this is what it's worth at age 70." And so I thought, well when it—when I'm 62, and can draw social security, and he will be 70 after that. So, it's just sort of a good time to do it.

Mary Blomdahl's testimony shows she entered into the settlement agreement with the understanding she would not be able to collect on Russell Blomdahl's retirement benefits until he reached the age of seventy. The trial court entered a divorce judgment consistent with that agreement. Precluding Mary Blomdahl from collecting on her interest in Russell Blomdahl's retirement benefits now would discourage, not encourage, settlements. We can encourage settlements, however, if we ensure that when a party fails to comply with a provision in a divorce judgment related to the distribution of property in the future, the aggrieved party will have a remedy that will extend beyond the ten years allowed for executing on the judgment. The absence of a time limit for initiating civil contempt proceedings to enforce provisions distributing property is, therefore, consistent with our policy of encouraging the peaceful settlements of property distribution in divorce cases.

[¶ 35] In addition, nothing in the plain language of N.D.C.C. § 14–05–25.1 suggests that the aggrieved party's right to bring a contempt action for failure to comply with a divorce judgment is contingent on whether the ten-year statute of limitations, applicable to actions for the enforcement of judgments, has expired. In fact, to hold that the remedy of civil contempt under N.D.C.C. § 14–05–25.1 is available only within the ten-year statute of limitations prescribed for actions upon a judgment, or within twenty years if the judgment is renewed, would defeat the legislature's intent to provide parties to a divorce judgment with the *additional* remedy of civil contempt. *M.M. v. Fargo Public School Dist. No. 1*, 2010 ND 102, ¶ 12, 783 N.W.2d 806 (citation omitted) ("This Court's primary objective in interpreting a statute is to ascertain legislative intent."); *see also McDowell v. Gillie*, 2001 ND 91, ¶ 11, 626 N.W.2d 666 (stating this Court interprets statutes in a practical manner and considers the context of the statute and the purpose for which it was enacted). We have repeatedly stated that statutes must be construed to avoid absurd results and that we presume the legislature intended a just and reasonable result in enacting a statute. *Cnty. of*

*Stutsman v. State Historical Soc'y,* 371 N.W.2d 321, 325 (N.D.1985); N.D.C.C. § 1–02–38(3) and (4). Yet, the majority's interpretation of N.D.C.C. § 14–05–25.1 produces just such an absurd and illogical result. The majority concludes: "Because the February 1993 judgment awarding Mary Blomdahl the retirement accounts expired after ten years without being renewed, the district court was without an enforceable judgment to enter an order finding Russell Blomdahl in contempt under N.D.C.C. § 14–05–25.1." *Majority,* at ¶ 14. However, leaving a party to a divorce judgment with no remedy after ten years from the entry of that judgment, or twenty years if the judgment is renewed, is exactly the type of injustice the legislature intended to prevent through the enactment of N.D.C.C. § 14–05–25.1. Therefore, by limiting Mary Blomdahl's right to bring an action for contempt here, the majority is depriving her of the right to civil contempt as a remedy for Russell Blomdahl's failure to comply with the portion of the divorce judgment, awarding her ninety percent interest in his retirement benefits, even though that right was specifically given to her by the legislature.

[¶ 36] Further, we have stated that "[s]tatutes relating to the same subject matter shall be construed together and should be harmonized, if possible, to give meaningful effect to each, without rendering one or the other useless." *N.D. Fair Hous. Council, Inc. v. Peterson,* 2001 ND 81, ¶ 36, 625 N.W.2d 551. Section 27–10–01.1(1)(b), N.D.C.C., defines contempt of court as the "[i]ntentional nonpayment of a sum of money ordered by the court to be paid in a case when *by law execution cannot be awarded for the collection of the sum.*" (Emphasis added.) Therefore, even if, as the majority concludes, the divorce judgment was no longer valid at the time of Mary Blomdahl's contempt mo-

tion, the judgment's presumed invalidity cannot be viewed as a bar to her contempt proceedings when N.D.C.C. §§ 27–10–01.1(1)(b) and 14–05–25.1 are construed together. I am of the opinion N.D.C.C. § 14–05–25.1 provides Mary Blomdahl the right to enforce the distribution of Russell Blomdahl's retirement benefits, awarded to her by the parties' divorce decree, through contempt proceedings. Applying N.D.C.C. § 27–10–01.1(1)(b), Mary Blomdahl is entitled to initiate such proceedings if: (1) Russell Blomdahl intentionally failed to pay her the ninety percent interest in his retirement benefits, as ordered by the trial court in the divorce decree and when (2) by law execution could not be awarded to collect that sum. Thus, even if I were to accept the majority's position the parties' 1993 divorce judgment expired after ten years, under our contempt statutes, Mary Blomdahl can still bring a contempt action to redress Russell Blomdahl's failure to comply with that provision of the divorce judgment, awarding her ninety percent interest in his retirement benefits.

IV

[¶ 37] Based on the applicable law, the record, and public policy considerations, I would reverse the trial court's decision and remand for further findings on whether Russell Blomdahl's failure to pay Mary Blomdahl her ninety percent interest in his retirement accounts constitutes "contempt of court" under N.D.C.C. § 27–10–01.1.

[¶ 38] MARY MUEHLEN MARING

GERALD W. VANDE WALLE, C.J., concurs in the result.